UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

ROBERT WILLIAM PETTY,　　　　）
　　　　　　　　　　　　　　　）
　　　　Plaintiff,　　　　　　　）　　　　Civil No. 08-159-GFVT
　　　　　　　　　　　　　　　）
v.　　　　　　　　　　　　　　）
　　　　　　　　　　　　　　　）
STEPHANIE RUSH, ET AL.,　　　　）　　**MEMORANDUM OPINION**
　　　　　　　　　　　　　　　）　　　**AND ORDER**
　　　　Defendants.　　　　　　）
　　　　　　　　　　　　　　　）
　　　　　　　　　　　　　　　）

**** **** **** ****

The Court considers the following matters in this proceeding:

(1)　　　The Motion to Dismiss, or in the Alternative, Motion for Summary Judgment ("Motion to Dismiss") [R. 77]  filed by counsel for the federal defendants, all of whom are employees of the United States Penitentiary-McCreary ("USP-McCreary");[1]

(2)　　　The Response to the Motion to Dismiss filed by *pro se* plaintiff Robert William Petty [R. 78];

(3)　　　Petty's Motion to Renew Request to Appoint Counsel [R. 79];

(4)　　　Petty's Motion for Leave to Renew Objections to Prior Orders (R. 12, 32, 41, 43, 58, 64, and 67) [R. 80];

(5)　　　Petty's Motion for Leave to Renew Discovery Requests [R. 81];

---

[1]

　　　　The named defendants are: (1) Stephanie Rush, Psychologist; (2) Lisa Gregory, Health Services Administrator ("HSA"); (3) Mark Dixon, Transporting Officer; (4) Anthony Daniel, Unit Officer; (5) Giovanni Ramriez, Disciplinary Hearing Officer ("DHO");  and (6) Jane and John Does.

(6)     Petty's Motion to Renew Rule 60(b) Motions [R. 82];

(7)     Petty's  Declaration in Support of Motion to Renew Rule 60(b) Motions [R. 83];

(8)     Petty's Statement in Opposition to Defendants' Motion to Dismiss [R. 84];

(9)     Petty's Cover Sheet [R. 85];

(10)    Petty's Motion Submitting Exhibits and Clarification to Support Motion in Opposition [R. 87];

(11)    Petty's Second Cover Sheet [R. 88];

(12)    Petty's Motion to Stay Response [R. 89];

(13)    Petty's Notice of Lockdown [R. 90];

(14)    The Defendants' Reply Memorandum [R. 91];

(15)    Petty's Memorandum and Clarification of Remedies Packet [R. 93];

(16)    Petty's Motion for Extension of Time in which to file Response/Reply to Defendants' Motion to Dismiss [R. 95];

(17)    Petty's Exhibits [R. 96 and R. 99];

(18)    Petty's Motion and Opposition to and/or Objection to Defendants' Memorandum In Support (of Motion to Dismiss) [R. 100];

(19)    Petty's Exhibit Relating to Lockdown Status of USP-Hazleton [R. 101]; and

(20)    The Defendants' Notice of Filing [R. 102].

For the reasons set forth below, the Court will strike many of Petty's unauthorized pleadings. The Court will further grant the defendants' Motion to Dismiss and enter judgment in favor of the defendants.  Accordingly, the Court will deny as moot Petty's motions seeking various forms of litigation relief.

# I.

Petty asserts numerous claims under: (1) 28 U.S.C. § 1331, pursuant to the doctrine announced in *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971); and (2) the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2680 ("the FTCA"). Petty's chief claim is that Chief Psychologist Rush violated his Eighth Amendment rights by knowingly allowing a dangerous and mentally ill inmate, whom he identified as "Infante," to be placed in the general population, despite Petty's warnings that Infante was dangerous. Petty alleges that he also informed HSA Gregory of these dangers, but that she similarly ignored his concerns.

Petty further alleges that although Infante assaulted and injured him, Petty was wrongfully charged with a disciplinary violation for fighting. Petty claims that DHO Ramirez made fraudulent and negligent misrepresentations of the facts, and that he was deliberately indifferent to the official written report of the incident.

Finally, Petty claims that Correctional Officers Daniel and Dixon negligently inventoried, packed, and secured his personal property when he went to the outside hospital and Special Housing Unit ("SHU") after the fight, resulting in the loss of his watch. Petty demands total damages in excess of $100,000.00 from the defendants for all of his claims.

On July 10, 2008, the Court entered an Order allowing Petty's *Bivens* claims to proceed, but dismissing two of Petty's four claims regarding lost property because of his failure to follow the FTCA's administrative exhaustion process. [R. 12.] The Court dismissed Petty's remaining two FTCA claims on the merits in light of *Ali v. Federal Bureau of Prisons*, 552 U.S. 214 (2008), which held that claims of negligence for property lost or destroyed at the hands of a law

enforcement officer are barred by 28 U.S.C. § 2680(c).[2]

## II.

The defendants argue that Petty's remaining *Bivens* claims should be dismissed for three reasons: (1) Petty failed to fully exhaust his claims through administrative channels; (2) Petty's claims are barred by the applicable one-year statute of limitations; and (3) Petty's one fully exhausted Eighth Amendment claim lacks merit. [R. 77.] In support of their argument that Petty failed to properly exhaust all but one of his *Bivens* claims through the Bureau of Prisons' ("BOP") administrative remedy process, the defendants submit the sworn Declaration of Joseph Tang, Supervisory Attorney at the BOP's Lexington Consolidated Legal Center. [R. 77-2.]

Petty responds that although he undertook all necessary steps to fully and completely exhaust his numerous grievances, the BOP hindered and impaired his efforts to administratively exhaust his claims. [R. 78.] He claims that any delay or lapses should not be attributed to him, but to the following factors beyond his control:

(1)     his confinement in the SHU for six months, from January of 2007 to July of 2007, which he alleges prevented him from initiating the grievance procedure;

(2)     the prison staff's failure to respond to his BP-8 Informal Requests and cop-outs;

(3)     the BOP's failure either to stamp, or double-stamp, their responses;

(4)     the  BOP's failure to sign or date their responses;

(5)     Petty's inability to use the copying machine; and

(6)     in one instance, Petty's inability to mail a BP-9 "Request for Administrative

---

[2]     Petty filed an appeal of the dismissal of his FTCA claims. On October 29, 2008, the Sixth Circuit dismissed the appeal as an improper interlocutory appeal. [R. 65.]

Remedy" to the Warden.

Petty argues that the defendants' actions in delaying his grievance efforts excuses him from the exhaustion requirement set forth in *Woodford v. Ngo*, 548 U.S. 81 (2006). He further argues that Kentucky's statute of limitation for personal injury actions, KRS §413.140, does not run until one year after a plaintiff has "a complete and present cause of action." Petty interprets this to mean that the statute of limitations is one year after he administratively exhausts his remedies. Alternatively, Petty argues that because he asserts constitutional claims in this action, the controlling statute of limitations is KRS §413.120(7), which provides a five-year statute of limitations.

In their Reply, the defendants dispute Petty's characterization of his exhaustion efforts. They argue that Petty failed to avail himself of procedures which would have allowed him to correct or resubmit any incorrectly filed grievances where defects had been noted. They reiterate that Petty's claims are barred by Kentucky's one-year statute of limitations and that Petty failed to assert valid Eighth Amendment claim against Daniel, Dixon, and DHO Ramirez.

### III.

### A.

As a preliminary matter, the Joint Local Rules ("LR") of the Eastern and Western Districts of Kentucky permit a party to file one response to a motion, and then permit the moving party to file a reply to the response within the prescribed time limit. *See* LR § 7.1 (c). Once the Reply is filed, the non-moving party is not permitted to file additional responsive pleadings.

In disregard of this established procedure, Petty has filed a barrage of other pleadings, entitled "Motions," "Declarations," "Statements," and "Exhibits," after he filed his authorized

Response [R. 78] to the defendants' Motion to Dismiss.  These filings are not authorized by the Local Rules.  The substance of the submissions reveal that they are nothing more than improper attempts to file multiple responses to the defendants' Motion to Dismiss.

The Supreme Court has made it clear that a district court has inherent authority to sanction parties appearing before it for acting vexatiously, wantonly, in bad faith, or for oppressive reasons.  *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 45 (1991).  "Although extreme deference is to be given to *pro se* plaintiffs, 'the right of self-representation is not a license to abuse the dignity of the courtroom.  Neither is it a license not to comply with relevant rules of procedural and substantive law.'"  *Vella v. McCammon*, No. 85-5580, 1986 WL 15772 , at *4 (S.D. Tex. July 29, 1986) (quoting *Faretta v. California*, 422 U.S. 806, 835 n. 46 (1975)).

In *Gregg v. SBC Ameritech*, 321 Fed. App'x 442, 449 (6th Cir. 2009), the Sixth Circuit upheld the district court's imposition of sanctions where a *pro se* litigant engaged in abusive filing tactics and in unnecessary delay of the proceedings by filing redundant pleadings. The court noted that the sanctions were particularly warranted because the district judge had repeatedly warned the *pro se* plaintiff to cease filing redundant pleadings.  *Id*.

On August 6, 2008, early in this proceeding, the Court entered an Order striking redundant and unauthorized filings.  [*See* Order, R. 32.]  That Order should have alerted Petty that continued abusive tactics of that nature would again subject him to sanctions.

While it is not unreasonable for a litigant to amend or supplement a filing one time if something has been omitted due to a good faith mistake, Petty's actions in bombarding this Court with repetitive, excessive unauthorized filings after filing his Response to the Motion to Dismiss constitutes bad faith and grounds for sanction.  The appropriate sanction for Petty's abusive filing

tactics is to strike from the record Petty's filings docketed as Record Numbers 83, 84, 85, 88, 90, 93, and 96. The Court will not consider these submissions and they will be held for naught. The only responsive pleading on Petty's behalf which the Court will consider is his Response docketed as Record Number 78, and a prior pleading which he filed on June 11, 2008 [R. 6].

## B.

### 1.

Petty alleges that Defendants Rush and Gregory ignored his warnings that Infante was a mentally ill and dangerous inmate, and that when Infante was released to the general population, he attacked him. Petty initiated the following administrative remedies regarding this issue: Administrative Remedy Nos. 472856, 472862, 475933, 472858, 472869, 472868, 47864 and 47855. However, because Petty failed to fully and properly exhaust these particular claims through the BOP's three-step administrative process due to various procedural defects, he did not "perfect" or accomplish complete exhaustion of these claims. Accordingly, these claims must be dismissed.

Title 28 C.F.R. § 542.13(a) demands that an inmate first informally present his complaint to the staff, thereby providing them with an opportunity to correct the problem, before filing a request for an administrative remedy. If the inmate cannot informally resolve his complaint, then he may submit a formal written request (a BP-9 form) to the Warden. *See* § 542.14(a). If the inmate is not satisfied with the Warden's response, he may appeal (via a BP-10 form) to the Regional Director, and, if not satisfied with the Regional Director's response, the inmate may appeal (via a BP-11 form) to the Office of General Counsel. *See* § 542.15 (a)-(b).

Title 42 U.S.C. § 1997e(a), the Prison Litigation Reform Act ("PLRA"), states, "No

action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).   In *Ngo*, the Supreme Court noted that "Congress enacted the [PLRA] in 1996 in the wake of a sharp rise in prisoner litigation in the federal courts." *Woodford v. Ngo*. 548 U.S. 81, 85 (2006).  The Court held that "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules." *Id*. at 90.  *See also Jones v. Bock*, 549 U.S. 199, 218 (2007) ("[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion").

The burden is on defendants to demonstrate that a prisoner has failed to properly exhaust his administrative remedies.  The Supreme Court has held that "no unexhausted claim may be considered." *Jones*, 549 U.S. at 220.  When a prisoner complaint contains both exhausted and unexhausted claims, the lower courts should not dismiss the entire "mixed" complaint, but are required to dismiss the unexhausted claims and proceed to address only the exhausted claims.  *Id*. at 219-24.  Proper exhaustion means "using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." *Ngo*, 548 U.S. at 90 (emphasis in original).

Petty's own submission [R. 78] substantiates the defendants' argument that Administrative Remedy Nos. 472856, 472862, 475933, 472858, 472869, and 472868 were rejected for procedural defects, including lateness.[3]  Thus, Petty has not properly exhausted his

---

[3]

Petty's Response contains the following information regarding his exhaustion efforts:

**Remedy No. 472869**:  November 26, 2007, BP-9 rejected as untimely; December 14, 2007, BP-10 rejected as untimely; January 18, 2008, BP-11 rejected as untimely. [R. 78, p. 6.]

claim that Defendants Rush and Gregory disregarded his safety by placing Infante in the general population, and proper exhaustion is what is required by *Ngo*.

Petty filed Administrative Remedy Nos. 47864 and 47855 in response to the adverse disciplinary decision rendered by DHO Ramirez. Although Petty's Response [R. 78] concerning these two Remedies was extremely convoluted, his June 11, 2008 First Declaration In Support of Complaint [R. 6] substantiates that he failed to properly exhaust those remedies, and that they

---

**Remedy No. 475933**: December 13, 2007, Petty filed BP-9 objecting to having been found "favorable for confinement," rejected for failure to submit to the Warden; December 31, 2007, BP-10 rejected as having been submitted to wrong institutional level; February 19, 2008, BP-11 rejected as having been submitted to the wrong institutional level. [R. 78, pp. 6-7.]

**Remedy No. 472862**: November 13, 2007, BP-9 claiming that staff had been deliberately indifferent or negligent by placing a mentally unstable prisoner with history of violence in general population rejected as untimely; December 14, 2007, BP-10 rejected for failure to attach DHO report; January 14, 2008, BP-10 rejected for untimeliness as being more than 20 days after DHO report. [R. 78, pp. 7- 9.]

**Remedy No. 472858**: November 13, 2007, BP-9 Request to Warden alleging discrimination rejected as untimely/more than 20 days after the event; December 14, 2007, BP-10 rejected as untimely/more than 20 days after the event; January 14, 2008, and February 19, 2008, BP-11 rejected for untimeliness as being more that 20 days after issuance of DHO report. [R. 78, pp. 9-10.]

**Remedy No. 472856**; July 24, 2007, Petty claimed he submitted a BP-8.5 Informal Remedy Request alleging failure to protect claim and that he received no response; November 13, 2007, BP-9 Request to Warden rejected as untimely/more than 20 days after the event; December 14, 2007, BP-10 rejected as untimely/more than 20 days after the event; January 18, 2008, BP-11 rejected for untimeliness as being more that 20 days after event. [R. 78, pp. 11-12.]

**Remedy No. 477868**: September 14, 2007, Petty claimed that he submitted a BP-8.5 Informal Remedy Request alleging that prison staff had been negligent in allowing the attack on him; November 13, 2007, BP-9 Request to Warden rejected as untimely; December 14, 2007, BP-10 rejected as untimely; January 18, 2008, BP-11 rejected as untimely. [R. 78, pp. 12-13.]

were denied on the basis of untimeliness.[4]

As the defendants correctly argue, these deficiencies resulted in unsuccessful exhaustion of those claims within the BOP administrative levels. Because none of these claims were accepted for a response at all three levels, they have not been administratively exhausted through the third tier of appeal, the National Inmate Appeals Administrator in Washington, D.C.

Petty's argues that he should be excused from the requirement of exhaustion. This argument lacks merit. First, Petty broadly alleges in his Response that his six-month confinement in the SHU at USP-McCreary prevented him from being able to pursue *any* grievance procedures between January 14, 2007, and July of 2007. [R. 78, p. 3.] However, in his Motion and Opposition to and/or Objection to Defendants' Memorandum In Support (of Motion to Dismiss) [R. 100], Petty clearly contradicts himself on this critical issue. Specifically, Petty states:

> **The Plaintiff contends that he filed various Informal Resolution Requests while housed in the Segregation Unit of USP-McCreary within the prescribed 20-day time limitation** . . . which were never responded thereto, and returned to Plaintiff . . . . Further, the Plaintiff was unable to obtain grievance responses, grievance copies, letter responses relating to grievances filed, and therefore, would be unable to effectively argue any BP-9 to the Warden without the Informal BP-8.5 response thereto the BP.9, or at least something attesting to the attempt.

---

4

With respect to **Administrative Remedy No. 472864**, Petty states that he submitted a BP-8.5 on September 14, 2007, challenging the January 14, 2007 Incident Report which to his disciplinary conviction and loss of GTC; that the BP-8.5 was denied as untimely on October 26, 2007; that on November 13, 2007, the Warden denied the BP-9 Request for Administrative Remedy as untimely; that on January 14, 2008, the BOP Mid-Atlantic Regional Office denied the BP-10 appeal as untimely for failure to file the remedy within twenty days of signature of the DHO report; and that on February 19, 2008, the BOP Central Office denied the BP-11 appeal as untimely. [R. 6, pp. 5-6.] Petty alleges the same time sequence with respect to the last three steps of **Administrative Remedy No. 472855**, which also pertained to his challenge of the DHO Report. [*Id.*, p. 8.]

[R. 100, pp. 5-6 (emphasis added).] Later in the same submission, Petty reiterates that his SHU confinement did not prevent him from filing BP-8 Informal grievances:

> Plaintiff could only allege his attempts at exhaustion at USP-McCreary due to unavailability or any validation from staff **relating to the attempts to exhaust while in segregation at USP-McCreary**.
>
> **The Plaintiff submitted letters, cop-puts, and grievances relating to the non-responsiveness of staff at USP-McCreary while house [sic] at USP-McCreary without any response thereto**.

[*Id*., p. 9 (emphasis added).] In these statements, Petty admits that he was able to, and did, file BP-8 Informal Requests to Staff while he was confined in the SHU. Therefore, he admits that the defendants did not "block" his ability to begin the exhaustion process while he was confined in the SHU.

Second, Petty argues that because USP-McCreary staff failed to respond to the BP-8 Informal Requests to Staff he filed while he was confined in the SHU, he was relieved of his obligation to file any subsequent BP-9 Requests for Administrative Remedy with the Warden within the twenty-day period prescribed by 28 C.F.R. § 542.14. Specifically, Petty claims that prison staff failed to provide him with written responses to his BP-8 (or BP-8.5) Requests, and that the absence of written responses prevented him from pursuing further grievance efforts.

Contrary to Petty's assertions, nothing in 28 C.F.R. § 542.14 requires an inmate to produce written denial of a BP-8 request prior to submitting a formal grievance, a BP-9 Request for Administrative Remedy, with the Warden.[5] Additionally, another regulation, 28 C.F.R.

---

[5] Title 28 C.F.R. § 542.14 provides as follows:

(a) Submission. The deadline for completion of informal resolution and submission of a formal written Administrative Remedy Request, on the

§542.18, clearly states that "[i]f the inmate does not receive a response within the time allotted for reply, including extension, the inmate may consider the absence of a response to be a denial at that level." 28 C.F.R. § 542.18. Thus, Petty should have considered the lack of response to his informal requests as denials of the requests, and he should have proceeded to file BP-9 Requests for Administrative Remedy with the Warden within twenty days of the complained-of events. Except for one claim, discussed below, he did not take that step. Contrary to Petty's argument, the staff's alleged failure to provide him with written responses to his BP-8 or BP-8.5 informal requests did not prevent, impair, or hinder him from pursuing the necessary formal BP- 9 administrative remedies with the Warden.

Other courts have reached the same result. In *Red Kettle v. Lappin*, No. 08-02029, 2009 WL 2044703 (W.D. La. July 8, 2009), the district court rejected as "an improper interpretation of the administrative remedies procedures" the prisoner's argument that the prison administration's failure to respond to his informal grievances prohibited him from seeking further administrative

---

appropriate form (BP-9), is 20 calendar days following the date on which the basis for the Request occurred.

(b) Extension. Where the inmate demonstrates a valid reason for delay, an extension in filing time may be allowed. In general, valid reason for delay means a situation which prevented the inmate from submitting the request within the established time frame. Valid reasons for delay include the following: an extended period in-transit during which the inmate was separated from documents needed to prepare the Request or Appeal; an extended period of time during which the inmate was physically incapable of preparing a Request or Appeal; an unusually long period taken for informal resolution attempts; indication by an inmate, verified by staff, that a response to the inmate's request for copies of dispositions requested under §542.19 of this part was delayed.

Notably, § 542.14 does not list confinement in the SHU as one of the valid reasons for delay.

review. *Id*. at *2. The court stated:

> Pursuant to § 542.18, the BOP's failure to timely respond to any grievance must be considered to be a denial at that level requiring petitioner to seek further review at the next level. . . . Thus, assuming the truth of petitioner's claim, the failure of the prison authorities to timely respond to petitioner's informal sentence calculation complaint authorized him to proceed to the next level in the administrative review process. He was not exempted from the exhaustion requirement.

*Id*. The court further explained that the prison staff's failure to respond to informal grievances did not constitute an "extraordinary circumstance" which would exempt a prisoner from the BOP's formal exhaustion process. *Id*. at *3. *See also Fjerstad v. Palmquist*, No. 08-00274, 2008 WL 4331633, at *3 (W.D. Wash. Sept. 17, 2008) (rejecting federal prisoner's claim that prison staff's failure to respond to his informal grievance made completion of exhaustion impossible);[6]

---

[6]

*Fjerstad* is particularly persuasive. There, prisoner Fjerstad argued that the following BOP Program Statement, dated 8/6/2002, required the staff to respond to an informal grievance <u>before</u> the formal grievance process could commence:

> The Warden is responsible for ensuring that effective informal resolution procedures are in place and that good faith attempts at informal resolution are made in an orderly and timely manner by both inmates and staff. *These procedures may not operate to limit inmate access to formal filing of a Request*.

*Fjerstad*, 2008 WL 4331633 at *3 (emphasis in original). Petty advances the same argument in this case, relying on BOP P.S. 1330.16. The district court expressly rejected that argument, stating:

> **This language [BOP Program Statement] strongly suggests that deficiencies in the informal resolution process will not be allowed to hinder an inmate's ability to seek resolution of his or her grievances through the formal administrative review process**. It further suggests that any failure by staff to make a good faith attempt at informal resolution is an issue which is properly brought to the attention of the Warden.

*Id*. at *3 (emphasis added).

*Jammes v. Alachua County Jail*, No. 05-00052, 2007 WL 2826069, at * 5 (N.D. Fla. Sept. 25, 2007) (same); *Williams v. Martin*, No. 04-0377, 2006 WL 1835110, at * 5 (N.D. Ga. June 30, 2006) (holding that prison officials' alleged failure to respond to informal grievances did not prevent prisoner from pursuing the two other steps of the Georgia Department of Corrections' grievance process, "which he was allowed to pursue even if he had not received a response to his informal grievance, assuming one was filed.").

Finally, the Court finds that Petty's other excuses for not properly exhausting his claims, set forth previously in this opinion, simply lack merit. Here, the defendants have demonstrated that Petty's claims, set forth in Administrative Remedy Nos. 472856, 472862, 475933, 472858, 472869, 472868, 47864 and 47855, were not properly exhausted. These claims were rejected for various reasons, primarily untimeliness. When a prisoner's grievance is rejected by the prison as untimely because it was not filed within the prescribed period, the claim is not "properly exhausted" for purposes of filing a § 1983 action in federal court. *Ngo*, 548 U.S. at 90-93; *see* 42 U.S.C. § 1997e(a); *Barney v. Correctional Medical Services, Inc.*, 08-CV-00694, 2009 WL 3711612, at *4 (W.D. Mich. Nov. 3, 2009). The Court is therefore not required to address on the merits, and will not address, any claims contained in Administrative Remedy Nos. 472856, 472862, 475933, 472858, 472869, 472868, 47864, and 47855.

**2.**

The claims asserted in the administrative remedies set forth in the preceding discussion suffer from another deficiency: they are barred by Kentucky's one-year statute of limitations. Ky. Rev. Stat. Ann. § 413.140. To determine the statute of limitations in a *Bivens* action, the Court applies the most analogous statute of limitations from the state where the claim arose.

*Baker v. Mukasey*, 287 Fed. App'x 422, 424 (6th Cir. 2008). Petty's claims arose in Kentucky, where a one-year statute of limitations applies. Ky. Rev. Stat. Ann. § 413.140(1)(a); *Mitchell v. Chapman*, 343 F.3d 811, 825 (6th Cir. 2003); *Collard v. Ky. Bd. of Nursing*, 896 F.2d 179, 182 (6th Cir. 1990). Federal law establishes that the statute of limitations accrues when the plaintiff knew or should have known of the injury that forms the basis of the claim alleged in the complaint. *Ruff v. Runyon*, 258 F.3d 498, 500-01 (6th Cir. 2001); *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996).

Petty's claims accrued on two dates: (1) January 14, 2007, the date on which he was involved in the physical altercation with Infante; and (2) April 10, 2007, the date on which DHO Ramirez issued his disciplinary report. Petty did not file this action until May 23, 2008, but urges the Court to equitably toll the one-year statute of limitations and exclude the six-month period during which he was confined in SHU and the other subsequent periods of time in which he partially exhausted his claims. The Court determines that the statute of limitations should not be tolled.

The time during which a prisoner exhausts his administrative remedies tolls the one-year statute of limitations. *Brown v. Morgan*, 209 F.3d 595, 596 (6th Cir. 2000). However, the tolling of the statute of limitations is an equitable remedy which requires diligence in the pursuit of those remedies. *Miller v. Collins*, 305 F.3d 491, 495-96 (6th Cir. 2002); *Irwin v. Dept. of Veterans' Affairs*, 498 U.S. 89, 96 (1990) ("We have allowed equitable tolling in situations where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period ...[but we] have generally been much less forgiving in receiving late filings where the claimant failed to exercise due diligence in preserving his legal rights.").

As explained in the preceding section, Petty failed to diligently pursue all but one formal grievance under the BOP's three-step administrative remedy process. Although Petty filed some formal grievances long after the events about which he complains, he did not do so in the manner prescribed, and in the time limit prescribed, by the federal regulations. Instead, he partially exhausted his claims according to a schedule that he created and followed, which is not what *Ngo* requires.

The Seventh Circuit has squarely addressed this issue. In *Santiago v. Snyder*, 211 Fed. App'x 478 (7th Cir. 2007), the prisoner argued that the statute of limitations should have been tolled during the eight months that he tried to resolve his grievances informally before initiating administrative proceedings. *Id* at **1. In rejecting this argument, the court adopted a "strict compliance approach" as to what qualified as exhaustion, and concluded that only formal exhaustion can toll the statute of limitations. *Id*. at **2. The court explained that "[b]ecause exhaustion requires compliance with the prison's administrative procedures, the prisoner can exhaust his administrative remedies only through *the completion* of such procedures (citations omitted)." *Id*. (emphasis added). The court determined that because Santiago had not complied with formal grievance procedures, the limitations period would not be tolled. *Id*.

In light of Petty's failure to properly exhaust his claims, except for the one claim discussed below, the Court is unwilling to equitably toll Kentucky's one-year statute of limitations during the six months when Petty was confined in the SHU or during the subsequent time-periods when he was either informally attempting to exhaust his claims or belatedly exhausting his claims through formal measures. To do otherwise would only accommodate Petty's lack of diligence in exhausting his claims. Ample authority exists for reaching this

conclusion. *See Austin v. Beard*, 351 Fed. App'x 780, 782 (3d Cir. 2009) (holding that where prisoner admitted that he failed to complete the state's grievance process and prison documents confirmed his failure to properly exhaust his remedies, the district court properly denied prisoner's request to equitably toll the statute of limitations); *Shakuur v. Costello*, 230 Fed. App'x 199, 201 (3d Cir. 2007) (holding that it was unnecessary to consider whether equitable tolling of Pennsylvania's two-year statute of limitations was required where prisoner failed to properly attempt to exhaust administrative remedies."); *Stafford v. Bureau of Prisons*, 08-82, 2008 WL 1924124, *2 (E.D. Ky. April 29, 2008) (holding that plaintiff's successive FTCA claim did not toll the running of the statute of limitations for a claim which the BOP had already fully and finally rejected for administrative settlement); *Trupei v. United States*, No. 03-00100, 2005 WL 2372159 (M.D. Fla. Sept. 27, 2005) (dismissing FTCA claims for lack of exhaustion where plaintiff filed a claim with another federal agency in April of 2002 but did not file a claim with the BOP until September of 2002).

Petty next argues that Kentucky's five-year statute of limitations, found in KRS 413.120(7), applies to constitutional claims like those he asserts. This argument also fails. In *Collard*, the plaintiff argued that because she had sustained no injury to her person but, rather, an injury to her rights, her claim was a residual one which fell under KRS 413.120(6)'s five-year statute of limitations. *Id*. 896 F.2d at 181. The panel rejected that argument and, after reviewing the entirety of §§ 413.120 and 413.140, determined that "Kentucky does not have 'multiple' statutes of limitations for personal injury actions," *id*. at 181, and that "[§] 1983 actions in Kentucky are limited by the one-year statute of limitations found in [§] 413.140(1)(a)." *Id*. at 182.

In *Bonner v. Perry*, 564 F.3d 424 (6th Cir. 2009), the Sixth Circuit discussed whether Kentucky's five-year statute of limitations could apply to a claim asserted under 42 U.S.C. § 1983, a corollary statute to *Bivens* under which a plaintiff can assert claims of constitutional wrongdoing against a person acting under color of state law. The plaintiff urged the Sixth Circuit to overrule *Collard*. The Sixth Circuit declined the invitation, stating as follows:

> Bonner does not cite any intervening Supreme Court decision that would allow us
> to reconsider the issue, nor are we sitting en banc. Therefore, we do not have the
> power to overrule *Collard* . . . . Thus, Bonner's argument must fail, and a
> one-year statute of limitations must be applied to Bonner's claim. Applying this
> one-year statute of limitations, we conclude that it is clear that Bonner's claim
> was filed outside the limitations period. The district court found that Bonner's
> claim accrued in 2004 and that she did not file this action until 2007. Bonner does
> not challenge these findings. Therefore, we hold that the district court correctly
> dismissed Bonner's claim as time-barred (internal citation omitted).

*Bonner*, 564 F.3d at 431.

*Bonner* thus disposes of Petty's argument that a claim arising in Kentucky under *Bivens*, or its corollary statute, 42 U.S.C. § 1983, is governed by anything other than Kentucky's one-year statute of limitations contained in Ky. Rev. Stat. Ann. 413.140(1)(a). The Court therefore rejects Petty's claim that a five-year statute of limitations applies to his claims.

**3.**

The record reflects that the only claim Petty administratively exhausted through all three levels was Administrative Remedy No. 485840, in which he claims that the BOP's classification system of mentally ill inmates is defective. [R. 77-5, p. 1; R. 102-1, p. 1.] The defendants seek dismissal of the claim, or in the alternative, summary judgment.

To the extent that the defendants' motion relies on evidence outside of the pleadings, it must be viewed as a motion for summary judgment. *See Tackett v. M & G Polymers*, *USA, LLC*,

561 F.3d 478, 487 (6th Cir. 2009) (citing Fed. R. Civ. P. 12(d)). Rule 56 requires the entry of summary judgment for the moving party if "there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Kand Medical, Inc. v. Freund Medical Products, Inc.*, 963 F.2d 125, 127 (6th Cir. 1992). The rule permits a defendant to challenge the viability of the plaintiff's claim by asserting that at least one essential element of plaintiff's claim is not supported by legally sufficient evidence. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986). The defendant does not need to present his own evidence to support this assertion, but need only point to the absence of evidence favoring the plaintiff. *Turner v. City of Taylor*, 412 F.3d 629, 638 (6th Cir. 2005).

In response, the plaintiff cannot rely upon allegations in the pleadings, but must point to evidence of record in affidavits, depositions, and written discovery demonstrating that factual questions remain for trial. *Hunley v. DuPont Auto*, 341 F.3d 491, 496 (6th Cir. 2003). If the totality of the evidence submitted–viewed in a light most favorable to the plaintiff with the benefit of any reasonable factual inferences which can be drawn in his favor, *Harbin-Bey v. Rutter*, 420 F.3d 571, 575 (6th Cir. 2005)–"would require a directed verdict for the moving party," summary judgment must be granted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986).

On March 8, 2008, Petty filed Administrative Remedy No. 485840, alleging that the BOP's classification system is defective as applied to the housing of mentally unstable inmates. [R. 77-5, p. 1; R. 102-1, p. 1.] Petty asked the BOP to revise its policy "to protect the general population from unprovoked attack," and demanded $100,000.00 in damages for "physical

damage, pain, suffering and emotional distress.[7]  [*Id.*]

Petty did not state in Administrative Remedy No. 485840 that his alleged pain, suffering, and emotional distress stemmed from the injuries he sustained in his fight with Infante on January 14, 2007.  An inmate, however, may not seek damages for emotional distress or mental suffering without showing a prior physical injury.  42 U.S.C. § 1997e(e).  *See Mitchell v. Horn*, 318 F.3d 523, 533 (3d Cir. 2003); *Zehner v. Trigg*, 133 F.3d 459, 461 (7th Cir. 1997).  Thus, it is logical to link Petty's claim that he experienced pain, suffering, and emotional distress to the physical injuries he sustained during his January 14, 2007 altercation with Infante.

On April 11, 2008, Joe Driver, Warden of USP-Hazelton, denied Petty's Administrative Remedy Request.  [*See* Response, R. 77-5, p. 2; R. 102-1, p. 2.]  Driver noted that Petty and another inmate were engaged in a fight on January 14, 2007.  He further noted that, as a result, Petty was placed in the SHU on January 15, 2007, an Incident Report charging Petty with Fighting With Another Person (violation of BOP Code #201) was issued, and Petty was ultimately convicted of the fighting offense.[8]  Additionally, Driver explained that inmates at BOP facilities are screened for mental illness, suicidal ideation, and homicidal ideation upon their

---

[7]

Petty submitted his BP-9 Request on March 8, 2008, to the Warden of USP-Hazelton, where he was then confined.  [R. 77-5, p. 1; R. 102-1, p. 1.]  It was stamped "Received" on March 12, 2008, which was over a  year after Petty's fight with Infante, and nearly nine months after he had been transferred from USP-McCreary.  [*Id.*]  On April 18, 2008, Petty reiterated the same complaint in his BP-10 appeal.  [R. 77-6, p. 1; R. 102-2., p. 1.]  On May 1, 2008, K. M. White, Regional Director BOP's Mid-Atlantic Regional Office, denied Petty's BP-10 appeal.  [R. 77-6, p. 2; R. 102-2, p. 2.]

[8]

On April 10, 2007, DHO Ramirez imposed several sanctions against Petty, including fifteen (15 days) in disciplinary segregation and the loss of fourteen (14) days of good conduct time.  [*See* DHO Report R. 6-1, p. 6.]

arrival at an institution, and if an inmate is deemed to fall into any of these categories or require

special attention as a result of a significant mental impairment or psychiatric problem, he or she

is interviewed monthly to assess his or her level of functioning and the need for change in

treatment.  [*Id.*]  According to Driver, officials at USP-McCreary fully complied with BOP

Statements 5100.08, *Inmate Security Designations and Custody Classification*; 5290.12, *Intake*

*Screening*; and 5310.13, *Mentally Ill Inmates, Institution Management of*, with respect to

Infante's security classification.

 Petty's Administrative Remedy No. 485840 is nothing more than a collateral challenge to

his disciplinary conviction imposed by DHO Giovanni Ramirez on April 10, 2007.  [*See* R. 6-1,

pp. 1-14.]  On that date, DHO Ramirez issued a lengthy report, explaining in detail the events

surrounding Petty's injuries resulting from his fight with Infante.  Summarized, Ramirez recited

Petty's own statements at the disciplinary hearing, which were that he had been fighting with

Infante over a disagreement between the two about the preparation of legal work.[9]  Significantly,

---

[9]

DHO Ramirez explained the reason for the altercation between Petty and Infante in the
section of the DHO Report entitled "Specific Evidence Relied On To Support Findings" [R. 6-1,
pp. 4-6]:

> The DHO finds that you committed the prohibited act of Fighting with another
> person, Code 201 while incarcerated at the United States Penitentiary McCreary at
> Pine Knot, Kentucky.
>
> The finding is based on the written statement of SIS Lieutenant, S. Burchett who
> attests that at 2:55 p.m. on April 3, 2007, an SIS investigation was completed
> concerning inmates Petty, Robert, and Infante-Cabrera, Arnaldo, being involved
> in a fight. Specifically, the fight occurred in the Common Area Unit 2A in front of
> cell 232 at approximately 3 : 0 9 p.m. on January 14, 2007.  A review of the
> recorded video surveillance system revealed at 3:09 p.m. on January 14, 2007,
> both inmates were clearly seen exchanging blows, striking each other with closed
> fist in the upper torso area.  **Upon conducting interviews with inmates**

Petty did not argue either at the hearing or in the handwritten supplement to his BP-9 appeal of his disciplinary conviction that Infante was a mentally unstable prisoner or that the BOP had erred by allowing Infante to interact with other prisoners. Instead, he explained why the two had become embroiled in a fight. [*See* BP-9 Request, R. 6-1, p. 9.] Ramirez found Petty guilty of the offense.

Petty's efforts to administratively appeal his disciplinary conviction were not successful. Petty now collaterally challenges that disciplinary conviction in this *Bivens* action, claiming that as a result of the BOP's failure to properly classify mentally ill inmates, he should be awarded $100,000.00 in damages for his pain, suffering, and emotional distress. In submitting Administrative Remedy No. 485840, Petty cleverly tried to reframe the issue as a claim that the

---

**Infante-Carbrera and Petty, they both admitted they were in the Common Area of Unit 2A at 3:09 p.m. on January 14, 2007. They also admitted they were fighting. The investigation concluded the fight more likely than not occurred due to a disagreement over some legal work. Infante-Carbrera claimed that Petty had approached him with a lock in his hand. Infante-Carbrera admitted to striking Petty and bitting his thumb. Inmate Petty admitted to striking Infante-Carbrera several times but was unclear if he had hit him first**.
. . . .
The DHO asked what you did about your injuries. You replied that you didn't report them either, but tried to take care of them yourself. **The DHO asked what happened. You replied you had an argument which had been going on for a while about his legal paperwork that you work on for him. You had an agreement and he wanted you to do more than what the agreement stipulated between you and him. He got angry, started raising his voice, and you started raising your voice back at him. He went to hit you and in self defense you hit him back. The DHO asked if the inmate was charged for doing legal work and you answered that he paid you $300.**

[DHO Report, R. 6-1, pp. 4-5 (emphasis added).]

BOP's classification of mentally ill inmates is "defective." Petty is essentially attempting to circumvent DHO Ramirez's findings of fact that he and Infante disagreed about the rendering of legal work, came to blows over the dispute, and engaged in a fight.

Petty cannot bring a *Bivens* action on the issue of allegedly defective inmate classification until his disciplinary convictions have been reversed, called into question, or otherwise set aside. *See Edwards v. Balisok*, 520 U.S. 641, 646 (1997) (holding that a claim that "necessarily impl[ies] the invalidity of the punishment imposed . . . is not cognizable under § 1983"); *Lanier v. Bryant*, 332 F.3d 999, 1005 (6th Cir. 2003) (applying *Balisok* to *Bivens* actions); and *Johnston v. Sanders*, 86 Fed. App'x 909, 910 (6th Cir. 2004) (prisoner could not challenge a disciplinary proceeding resulting in a loss of good-time credits in a *Bivens* action because his disciplinary conviction had not been reversed).

This case is materially indistinguishable from *Edwards* for two reasons: (1) Petty failed to obtain the reversal of either his prison disciplinary conviction for violating BOP Code #201, Fighting With Another Person, or his punishment for that conviction, prior to initiating this lawsuit, and (2) a judgment in Petty's favor on his one exhausted claim, that the BOP's classification system caused him pain, suffering, and emotional distress, would necessarily imply the invalidity of his April 10, 2007 disciplinary conviction for Fighting With Another Person. Challenges to a disciplinary conviction must be brought by way of a petition for writ of habeas corpus under 28 U.S.C. § 2241, not through a *Bivens* action. *Preiser v. Rodriguez*, 411 U.S. 475, 488-90 (1973). Thus, the result reached in *Edwards* must also be reached here.

**4.**

The defendants have adequately demonstrated that Petty failed to administratively

exhaust his claims, except the one claim raised in Administrative Remedy No. 485840.  Since the defendants addressed two other claims on the merits, however, the Court will briefly address them.

In response to Petty's claim that Officers Daniel and Dixon improperly inventoried, secured and stored his personal property at USP-McCreary, the defendants argue that Petty has asserted only claims of negligence which do not amount to constitutional violations.  They note that in Petty's complaint, he refers to the "negligent handling of Plaintiff's property . . . .," and the "negligent loss of Plaintiff's personal property . . . ."  [R. 2, pp. 2, 6.]  They further note that Petty claims that Defendant Daniel "negligently inventoried Plaintiff's personal property, and . . . negligently failed to pack $75.28 worth of Plaintiff's personal property."  [*Id*., p. 7.]

In his Complaint, Petty used the words "deliberate indifference" when referring to the disposition of his personal property by Defendants Daniel and Dixon.  [*Id*., p. 2.]  He claims both defendants were "deliberately indifferent to the safeguarding of Plaintiff's property."  [*Id*.]  The defendants correctly argue that Petty's "deliberate indifference" label does not control the construction of the claim.  The Sixth Circuit has made clear that "the label which a plaintiff applies to a pleading does not determine the nature of the cause of action which he states." *United States v. Louisville & Nashville R. Co.*, 221 F.2d 698, 701 (6th Cir. 1955).

Despite Petty's choice of words, he asserts a negligence claim under the guise of an Eighth Amendment claim.  The Court has previously dismissed Petty's FTCA negligence claims. He cannot maintain a *Bivens* claim against Daniels and Dixon because negligence on the part of public officials is insufficient to state a constitutional civil rights claim.  *Daniels v. Williams*, 474 U.S. 327, 330-33 (1986).   Alternatively, even if the Court were to construe the claim as one of

gross negligence actionable under the Eighth Amendment, the claim would still fail because the only *Bivens* claim Petty has fully and completely exhausted is Administrative Remedy No. 485840, in which Petty challenged the BOP's classification of mentally ill inmates.

Finally, Petty alleges that DHO Ramirez "made various fraudulent and/or negligent misrepresentations of material fact within the written record, or, was deliberately indifferent to the contents of the written report." [R. 2, p. 2.] As discussed previously, Petty cannot bring a *Bivens* action on these charges until his disciplinary conviction has been reversed, as success in a *Bivens* action would necessarily imply the invalidity of his conviction. *See Edwards v. Balisok*, 520 U.S. at 646.

For these reasons, the Court will dismiss Petty's claims and will deny as moot Petty's motions docked as Record Numbers 79, 80, 81, 82, 87, 89, 95, and 100.[10]

**IV.**

Accordingly, and the Court being otherwise sufficiently advised, it is hereby **ORDERED** as follows:

(1)     The Clerk of the Court is directed to **STRIKE** from the record Petty's filings docketed as Record Numbers 83, 84, 85, 88, 90, 93, and 96. The Court will not consider these submissions and they will be held for naught.

(2)     The defendants' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment [R. 77] is **GRANTED**.

---

[10]     In these motions, Petty seeks various forms of relief including but not limited to the appointment of counsel, the issuance of numerous Orders, permission to renew objections to the defendants' filings, permission to "stay" the proceeding, and extensions of time in which to file responses.

(3)     Petty's Motion to Renew Request to Appoint Counsel [R. 79] is **DENIED** as

**MOOT.**

(4)     Petty's Motion for Leave to Renew Objections to Prior Orders [R. 80] is

**DENIED** as **MOOT**.

(5)     Petty's Motion for Leave to Renew Discovery Requests [R. 81] is **DENIED** as

**MOOT**.

(6)     Petty's Motion to Renew Rule 60(b) Motions [R. 82] is **DENIED** as **MOOT**.

(7)     Petty's Motion Submitting Exhibits and Clarification to Support Motion in

Opposition [R. 87] is **DENIED** as **MOOT**.

(8)     Petty's Motion to Stay Response [R. 89] is **DENIED** as **MOOT**.

(9)     Petty's Motion for Extension of Time in which to file Response/ Reply to

Defendants' Motion to Dismiss [R. 95] is **DENIED** as **MOOT**.

(10)    Petty's Motion and Opposition to and/or Objection to Defendants' Memorandum

In Support of Motion to Dismiss [R. 100] is **DENIED** as **MOOT**.

(11)    All constitutional claims asserted by Petty against the individually named federal

defendants in their individual capacities are **DISMISSED** with prejudice.

(12)    This action [6:08-CV-159-GFVT] is **DISMISSED** with prejudice.

(13)     Judgment shall be entered contemporaneously with this Memorandum Opinion

and Order in favor of the named defendants herein.

This the 4th day of May, 2010.

Signed By:

*Gregory F. Van Tatenhove* 

United States District Judge